# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WEST VIRGINIA DIVISION OF HIGHWAYS,**
**Employer Below, Petitioner**

**FILED**
**June 2, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-10**          (JCN: 2022025504)

**RODNEY GAUVIN,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner West Virginia Division of Highways ("WVDOH") appeals the December 10, 2025, order of the Workers' Compensation Board of Review ("Board").[1] Respondent Rodney Gauvin timely filed a response. WVDOH filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's issue orders, which granted Mr. Gauvin a 1% permanent partial disability ("PPD") award, and granting him an additional 13%, for a total PPD award of 14%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On December 15, 2022, the claim administrator issued an order approving the December 7, 2022, request of Chad Micucci, M.D., for authorization for left shoulder arthroscopy, diagnostic arthroscopy, debridement versus repair of the rotator cuff, biceps tenodesis, and arthroscopic versus open techniques.[2] Mr. Gauvin underwent an MRI of the cervical spine on September 10, 2023, revealing a left paracentral disc protrusion at C4-C5

---

[1] WVDOH is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Gauvin is represented by Christopher J. Wallace, Esq.

[2] The claim administrator issued an order dated June 27, 2024, which indicated that additional conditions were approved in the claim. The list of compensable conditions included strain muscle, fascia, and tendon other part of biceps; strain muscle, fascia, and tendon neck level; strain unspecified shoulder upper arm level of left arm; bicipital tendonitis left shoulder; and superior glenoid labrum lesion left shoulder.

with perhaps slightly greater impingement of the left cervical cord compared to a prior study; and a right paracentral disc protrusion with mild cord impingement at C5-C6 noted from a prior study.[3]

Jennifer Lultschik, M.D., evaluated Mr. Gauvin on September 26, 2023. She stated that Mr. Gauvin was injured on June 22, 2022, while operating an excavator when the machine struck buried flexible plastic piping. Mr. Gauvin reported that the pipe bounced up and struck his left elbow, shoulder, neck, and head. Dr. Lultschik indicated that Mr. Gauvin underwent left shoulder arthroscopy and biceps tenodesis on February 16, 2023, performed by Dr. Micucci. Dr. Lultschik noted that on May 1, 2023, Dr. Micucci reported that Mr. Gauvin had resolution of his pain following a left elbow injection and had full forward active range of motion and full functional range of motion in all planes upon examination. Dr. Lultschik further noted that on July 25, 2023, Mr. Gauvin reported to Gary Barcinas, PA, that he was having acute left shoulder pain radiating throughout the left upper extremity with associated neck pain, left upper extremity weakness, numbness, and headaches.

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Lultschik found that, for the diagnosis of strain of muscle, fascia, and tendon at neck level, Mr. Gauvin had 4% whole person impairment ("WPI") from Table 75, Category IIB. Dr. Lultschik was unable to obtain valid cervical range of motion measurements. Dr. Lultschik applied West Virginia Code of State Rules § 85-20 ("Rule 20") and opined that Mr. Gauvin would fall within Cervical Category II, which has a 5% to 8% impairment range, and thus she adjusted the finding of 4% to 5%. From this, Dr. Lultschik apportioned all of the impairment to the degenerative changes shown on the MRI scans and 0% to the compensable cervical strain injury. Regarding the left shoulder and left biceps strains, Dr. Lultschik found 3% upper extremity impairment ("UEI") for loss of shoulder flexion, and a 2% UEI for loss of shoulder abduction. In total, Dr. Lultschik found 5% UEI for loss of range of motion in the left shoulder. Regarding the left elbow, Dr. Lultschik found 1% UEI for loss of elbow flexion. Thus, Dr. Lultschik found a total of 1% UEI for loss of elbow range of motion. Combining the elbow and shoulder impairments, Dr. Lultschik recommended 6% UEI for regional loss of range of motion in the left upper extremity with no neurological impairments, which converted to 4% WPI. Dr. Lultschik compared the 4% WPI in the left extremity to a 5% WPI she found for the uninjured right shoulder. Dr. Lultschik believed the 5% WPI found in Mr. Gauvin's right shoulder represented baseline impairment for both shoulders. Therefore, Dr. Lultschik apportioned the 4% WPI for the left extremity and recommended no WPI for the left shoulder. To summarize, Dr. Lultschik recommended 0% impairment for the neck, left shoulder, and left elbow injuries.

---

[3] The MRI report was not included in either party's appendix, but it was noted in Dr. Lultschik's report.

The claim administrator issued an order dated October 17, 2023, which granted a 0% PPD award based upon Dr. Lultschik's report dated September 26, 2023. Mr. Gauvin protested this order.

On October 15, 2024, Marcus Cervantes, M.D., evaluated Mr. Gauvin and reviewed his medical records and Dr. Lultschik's report. Mr. Gauvin advised that he was having a particularly bad day with symptoms and was frustrated that his exam was scheduled on that date. Mr. Gauvin reported constant pain in his neck, pain in the right and left shoulders, that his left hand was numb and weak, and he dropped things frequently. He stated that his left elbow pain returned in March 2024 after having eight to nine months of relief from a steroid shot. Dr. Cervantes noted that cervical paraspinals were nontender to palpation, and the bilateral trapezius was tender to palpation with vocalization and grimacing. He also noted significant tenderness with minimal superficial palpation across multiple anatomic sites and structures, and pain with axial loading. Dr. Cervantes found that sensation was absent on the left in digits one through four. Dr. Cervantes opined that there were no acute findings on the cervical MRI. He stated there was a disk protrusion with associated osteophyte complexes, which were degenerative in nature, and thus, preexisting to the claim. Additionally, Dr. Cervantes stated that, regarding the elbow, the partial tear was degenerative and due to epicondylitis rather than the industrial incident.

Using the *Guides* and Rule 20, Dr. Cervantes opined that, for the cervical spine, Mr. Gauvin fell under Table 75, Category II-C due to degenerative changes that included unoperated on herniated nucleus pulposus with or without radiculopathy. Dr. Cervantes indicated that he was unable to obtain valid cervical range of motion measurements. Dr. Cervantes further indicated that he was unable to obtain valid left elbow and shoulder range of motion measurements. Dr. Cervantes opined that the range of motion testing was invalid due to pain and Mr. Gauvin's "submaximal effort." Dr. Cervantes stated that Mr. Gauvin had 5% WPI previously awarded for the cervical spine.[4] He stated that, based on his evaluation, 6% WPI was attributable to the cervical spine, from which he deducted 5% for a previous award and recommended 1% WPI for the diagnoses in the claim.

The claim administrator issued an order dated November 23, 2024, granting Mr. Gauvin a 1% PPD award based upon Dr. Cervantes' report dated October 15, 2024. Mr. Gauvin protested this order.

---

[4] We note that it is not reflected in the record that Mr. Gauvin was awarded 5% WPI related to the cervical spine in this claim. WVDOH, in its brief, indicates that Dr. Cervantes mistakenly believed Dr. Lultschik recommended a 5% WPI to the cervical spine, and that Mr. Gauvin was awarded a 5% PPD for the cervical injury in this claim.

3

On October 28, 2024, Bruce Guberman, M.D., evaluated Mr. Gauvin and noted that his current complaints were constant pain and stiffness through the left shoulder with occasional swelling, weakness in the left shoulder and the left biceps muscle, especially with the use of the left arm or overhead or away from the body. Mr. Gauvin also reported constant pain at the left elbow with stiffness and constant pain in the cervical spine that radiated to head, shoulders, and the bilateral arms, hands, and fingers. Dr. Guberman noted that Mr. Gauvin stopped working the day after his left shoulder surgery and returned to work approximately three months after the surgery. Dr. Guberman stated that the examination of the cervical spine revealed moderate tenderness and no spasm, and he documented Mr. Gauvin's range of motion measurements. The examination of the right shoulder revealed no tenderness, redness, warmth, or swelling, and the range of motion measurements were likewise documented. The examination of the left shoulder revealed moderate tenderness but no redness, warmth, or swelling. Dr. Guberman noted well healed surgical scars on the left shoulder, and he documented the range of motion findings.

Using the *Guides*, Dr. Guberman rated the cervical spine, and he classified Mr. Gauvin under Table 75, Category II-B for 4% WPI. He opined that the range of motion studies of the cervical spine were felt to be reliable, reproducible, and valid, and not due to pain or fear of injury. Dr. Guberman found 5% WPI for reduced flexion and extension; 2% WPI for reduced lateral flexion; and 4% WPI for reduced rotation for a total of 11% WPI for reduced cervical range of motion, which he combined with the 4%WPI from Table 75, for a total of 14% WPI. Applying Rule 20, Dr. Guberman opined that Mr. Gauvin would fall within Cervical Category II, which has a 5% to 8% impairment range, and thus he adjusted the rating to 8% WPI. He stated that he placed Mr. Gauvin under Category II because he had a clinical history and examination findings consistent with an injury at work on June 22, 2024, and also for radiation of pain into his left arm with sensory loss, which are consistent with non-verifiable radicular components. Dr. Guberman opined that the atrophy of the left arm was, at least in part, related to the injuries to the left shoulder and left elbow. Dr. Guberman noted that imaging studies showed evidence of preexisting degenerative changes, but as far as could be determined, Mr. Gauvin was asymptomatic with no impairment in his activities of daily living, no limitations at work, no pain, no stiffness, and would not have qualified for an impairment rating for cervical spine before the current injury under either the range of motion model or Rule 20. Therefore, Dr. Guberman attributed the entire 8% WPI to the injury.

Regarding the left shoulder, Dr. Guberman opined that Mr. Gauvin had 5% UEI for range of motion abnormalities of flexion and extension, 4% UEI for range of motion abnormalities in abduction and adduction, and 2% UEI for range of motion abnormalities in internal and external rotation, for a combined impairment of 11% UEI for range of motion abnormalities in the left shoulder. Dr. Guberman converted 11% UEI to 7% WPI. He stated that Mr. Gauvin did have a prior history of left shoulder surgery, but he apparently recovered without sequelae, and imaging studies revealed evidence of

4

preexisting degenerative changes. Dr. Guberman also noted range of motion anomalies on examination of the uninjured right shoulder, presumably related to underlying degenerative changes. He stated that there was 2% UEI for loss of range of motion of the uninjured right shoulder, which he converted to a 1% WPI. Dr. Guberman deducted that amount from the 7% WPI for the left shoulder, leaving 6% related to the injury. Regarding the left elbow, Dr. Guberman stated that the range of motion was the same as that of the uninjured right elbow, and thus, he recommended no impairment for the left elbow. Dr. Guberman ultimately found 14% WPI related to the injury.

On July 29, 2025, Christopher Martin, M.D., evaluated Mr. Gauvin and reviewed his medical history. Dr. Martin opined that the imaging studies showed degenerative changes at four levels of the cervical spine, which were preexisting and unrelated to the injury. For the left shoulder, Dr. Martin also opined that findings were degenerative and preexisting. Mr. Gauvin reported express discomfort with all range of motion measurements in the neck and shoulder. Mr. Gauvin further reported that a supine position was generally very uncomfortable for him and he never lies flat. Dr. Martin indicated that Mr. Gauvin completed three measures in all planes of the cervical spine, but he stopped each maneuver abruptly and reported muscle spasms and sensations of painful pulling and burning. Mr. Gauvin also reported pain over the biceps tendon and tip of the left shoulder, and that his entire left hand was numb. Mr. Gauvin indicated that he would be unable to perform the exercises required for range of motion measurements for the right shoulder as he had suffered a recent injury. Using the *Guides* and Rule 20, Dr. Martin provided an impairment rating. Dr. Martin opined that, for the cervical spine, a Table 75 impairment was unjustified as there were no structural findings related to a strain. Dr. Martin reported that the range of motion measurements for the cervical spine and left shoulder were invalid as they were pain limited. As a result, Dr. Martin opined that Mr. Gauvin had 0% WPI related to the compensable injury.

On December 10, 2025, the Board reversed the claim administrator's orders, which granted Mr. Gauvin a 1% PPD award, and instead granted him an additional 13%, for a total PPD award of 14%. The Board found that Mr. Gauvin established that he was entitled to a 14% PPD award. WVDOH now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

5

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WVDOH argues that it is "inherently inconsistent" to find that Dr. Martin's report should be disregarded as an outlier simply because he had a difference of opinion with regard to classification under the *Guides*, yet the Board failed to find the same for Dr. Guberman's report. Further, WVDOH argues that the Board disregarded Dr. Martin's reasoning as to why the assignment of impairment under Table 75 of the *Guides* was inappropriate. Finally, WVDOH argues that Mr. Gauvin is being "rewarded for inconsistent effort." We disagree.

Here, the Board found that Dr. Guberman's report is the most reliable. The Board also rejected WVDOH's argument that Dr. Guberman's report must be rejected because he was the only evaluator to obtain valid cervical range of motion findings. According to the Board, it is not acceptable or logical to reject a report solely because it provides valid findings.

Further, the Board found that Dr. Martin's report was not reliable given that he was the only evaluator to find no cervical impairment under both the *Guides* and Rule 20. The Board noted that all other evaluators found cervical impairment. The Board also noted that Drs. Lultschik and Guberman found valid range of motion findings for the left and right shoulder, and that both reports were reliable with respect to the upper extremities. According to the Board, Dr. Guberman's and Dr. Lultschik's upper extremity recommendations were entitled to equal weight, and therefore pursuant to West Virginia Code § 23-4-1g(a) the Board adopted the opinion most favorable to the claimant, which is Dr. Guberman's finding of a 6% WPI for the left shoulder.[5] In summary, the Board found that Dr. Guberman's findings with respect to the cervical spine and left upper extremity are the most reliable. Therefore, it found that Mr. Gauvin is entitled to 14% WPI as recommended by Dr. Guberman.

---

[5] West Virginia Code § 23-4-1g(a) provides in part that "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted."

WVDOH concedes that the reports of Drs. Lultschik and Cervantes are invalid. It notes that Dr. Lultschik's report should not be used for an impairment rating because she apportioned for preexisting degenerative impairment when there are no medical reports of record to provide any "definitely ascertainable" preexisting impairment. Dr. Cervantes, WVDOH concedes, mistakenly apportioned 5% impairment to a previous PPD award. Instead, WVDOH argues that the Board was clearly wrong for not adopting Dr. Martin's report.

The Board did not commit error when it found that Dr. Martin's opinions were an outlier because he is the only evaluator to recommend no impairment to the cervical spine. The evidence in the record indicates Mr. Gauvin has cervical impairment, and Mr. Gauvin demonstrated that his cervical impairment is from the compensable injury. Moreover, the Board correctly rejected WVDOH's arguments that Dr. Guberman's report should be rejected because he observed valid range of motion measurements. The Board did not find that Mr. Gauvin was malingering or intentionally subverting range of motion tests.

Accordingly, we affirm the Board's December 10, 2025, order.

Affirmed.

**ISSUED:** June 2, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

7